(28 Misc. Rep. 411.)

PEOPLE ex rel. SMITH v. DOYLE et al.

(Supreme Court, Special Term, New York County. July, 1899.)

WRIT OF PROHIBITION—MILITARY BOARD OF EXAMINATION—GROUNDS—WHEN LIES.

> Where a commissioned officer in the National Guard of this state is directed to appear before a board of examination, provided for by Military Code, § 64 (Laws 1898, c. 212), to be examined with respect to his fitness for service as a commissioned officer, a writ directed to such board to prohibit it from receiving in evidence proceedings of a court of inquiry before which said officer had been tried, and the testimony taken therein, and from considering or basing any conclusion on such evidence or proceedings, and from taking any evidence relating to such officer's conduct while acting as an officer in the United States service, and from taking any action on any but legal evidence that shows whether or not said officer has at present a moral character, capacity, and fitness to serve as a commissioned officer in the National Guard, will not lie.

Application by the people, on the relation of Clinton H. Smith, against Peter C. Doyle and others, for writ of prohibition. Writ dismissed.

Alexander S. Bacon, for relator.

John H. Coyne, Dep. Atty. Gen., for respondents.

BEEKMAN, J. The relator is a duly-commissioned officer in the National Guard of this state, and during the late war with Spain was in the service of the United States, commissioned as lieutenant colonel of the 71st regiment of infantry, New York volunteers. His conduct while in the federal service having been the subject of criticism after he had been mustered out of the service of the United States, a court of inquiry was ordered on his written request, pursuant to the Military Code of this state, which court took evidence with respect to the accusation or imputations against him, and reported the same to the officer by whom the court was convened, together with a statement of the facts and the opinion of the court thereon, which was so far adverse to the relator that a recommendation was made that charges be preferred against him for trial by a court-martial, or, if it should be considered that such a court would not have jurisdiction to entertain such charges because they involved offenses committed while in the United States service, then that he be ordered before an examining board, to determine his capacity and fitness to serve as an officer of the state militia. The proceedings of the court having been approved, and the doubt suggested with respect to the competency of a court-martial to act in the matter being considered to be well founded, the governor directed the relator to appear before a board of examination, which was duly constituted for the purpose, to be examined with respect to his moral character, capacity, and general fitness for service in the National Guard as a commissioned officer. The relator, having sued out an alternative writ of prohibition directed to said board, asks the court for a peremptory writ prohibiting the board from receiving in evidence the proceedings of the court of inquiry and the testimony taken before it; from considering or basing any conclusion upon such evidence or proceedings; from receiving any except legal evidence; from taking any evidence

respecting the conduct of the relator while acting as an officer in the service of the United States, and while serving without the United States; from basing any recommendation upon such conduct, or upon isolated, specific acts of omission or commission on July 1 and 2, 1898, the dates upon which the alleged acts of misconduct of the relator took place, which acts might have subjected the relator to trial by court-martial; and, finally, from taking any action upon any but legal evidence that shows whether or not said relator has, at this date, a moral character, capacity, and general fitness to serve in the National Guard as a commissioned officer. The writ is also addressed to the governor of the state. Upon the return day of the alternative writ the respondents, appearing by the attorney general, moved that the writ be dismissed.

The facts of the case are very voluminous, and were discussed with great earnestness by the learned counsel for the relator, but the question before me is purely one of law, not requiring any consideration of the case upon the merits, and I shall therefore refrain from any such discussion, as well as from the expression of any opinion, directly or indirectly, upon the conduct of the relator. The sole question to be determined here is whether, as matter of law, sufficient grounds are presented to support the writ asked for. Although military courts are not embraced within the judicial system of the state, but rather appertain to the executive department, to which is confided the administration of the military law of the state, they are tribunals possessing functions which are highly judicial in their nature. Their jurisdiction is special and peculiar, and is confined to the trial of persons in the military service of the state for offenses committed by them against military law, and their punishment, if found to be guilty. It has been held in England that, while these courts possess exclusive jurisdiction with respect to the matters that come within their purview, they are still amenable to the civil courts in so far as questions of jurisdiction are concerned, and may be restrained by writ of prohibition from proceeding in excess of jurisdiction. Grant v. Gould, 2 H. Bl. 69. This case, which was decided in 1792, seems to be the leading authority upon the subject both in England and in this country, and is cited in every decision bearing upon the subject which I have examined. Lord Loughborough, in pronouncing the decision of the court in that case, while holding that a writ of prohibition will issue to such courts, says (pages 100, 101):

"This court being established in this country by positive law, the proceedings of it, and the relation in which it will stand to the courts of Westminster Hall, must depend upon the same rules with all other courts which are instituted and have particular powers given them, and whose acts therefore may become the subject of applications to the courts of Westminster Hall for a prohibition. Naval courts-martial, military courts-martial, courts of admiralty, courts of prize, are all liable to the controlling authority which the courts of Westminster Hall have, from time to time, exercised for the purpose of preventing them from exceeding the jurisdiction given to them; the general ground of prohibition being an excess of jurisdiction when they assume a power to act in matters not within their cognizance. * * * That they have decided wrong may be a ground of appeal, may be a ground of review, but not a ground of prohibition."

Elsewhere in his opinion the learned judge further says:

"I have stated the observations generally upon the nature of an application for a prohibition. The foundation for it must be that the inferior court is acting without jurisdiction. It cannot be a foundation for a prohibition that, in the exercise of their jurisdiction, the court has acted erroneously. That may be a matter of appeal, where there is an appeal, or a matter of review."

Clode (an English authority), in his work on Military and Martial Law (pages 117, 118), says:

"The points, therefore, that may be raised upon prohibition are mainly two: Firstly. Is the prisoner one over whom, in the words of the mutiny act, the court-martial has jurisdiction? Secondly. Is the offense charged against him one for which he is amenable to a military tribunal?"

At pages 139 and 140 the author refers to the case of Grant v. Gould, and says:

"For a prohibition, the two principal grounds have been already stated; but, in addition to these, others were urged, though without success, in Grant v. Gould, to this effect: (1) That, contrary to the rules of the common law, evidence that ought to have been rejected was received, and that evidence which ought to have been received was rejected by the court. (2) That the prisoner was not, before his trial, specifically charged with the offense of which the court found him guilty. Not admitting that a court-martial was bound in all cases to adopt all the distinctions in the law of evidence that have been established in the common-law courts, or that the queen's bench should interfere for error which might be the subject of review or appeal, Lord Loughborough refused to grant a prohibition. 'It would,' said the learned judge,—and his words were quoted with approval in 1833 by Lord Denman (In re Poe, 5 Barn. & Adol. 688),—'be extremely absurd to expect the same precision in a charge brought before a court-martial as is required to support a conviction by a justice of the peace.'"

Turning now to a consideration of the decisions in this country, we find them in the main in harmony with the law of England upon the subject. In the case of Smith v. Whitney, 116 U. S. 167, 6 Sup. Ct. 570, a motion was made in the supreme court of the District of Columbia for a writ of prohibition directed to the secretary of the navy and to a court-martial which had been convened by his order for the purpose of trying the petitioner for certain offenses. The petition was dismissed on the ground of lack of jurisdiction. Upon an appeal to the supreme court of the United States the action of the court below was sustained on the ground that, even assuming that there was power to issue the writ, no case was shown for the exercise of it. But, although the court expressly reserved its opinion upon the question of jurisdiction, the limitations of the writ, assuming its application to such a case, are very clearly expressed. At page 176, 116 U. S., and page 574, 6 Sup. Ct., the court says:

"A writ of prohibition is never to be issued unless it clearly appears that the inferior court is about to exceed its jurisdiction. It cannot be made to serve the purpose of a writ of error or certiorari, to correct mistakes of that court in deciding any question of law or fact within its jurisdiction. These rules have been always adhered to by this court in the exercise of the power expressly conferred upon it by congress to issue writs of prohibition to the district courts sitting as courts of admiralty (U. S. v. Peters, 3 Dall. 121; Ex parte Easton, 95 U. S. 68; Ex parte Gordon, 104 U. S. 515; Ex parte Ferry Co., Id. 519; Ex parte Pennsylvania, 109 U. S. 174, 3 Sup. Ct. 84), as well as by the courts of England and of the several states in the exercise of their inherent jurisdiction to issue writs of prohibition to courts-martial (Grant v. Gould, 2 H. Bl.

69; State v. Wakely, 2 Nott & McC. 410; State v. Stevens, 2 McCord, 32; Washburn v. Phillips, 2 Metc. [Mass.] 296); and this court, although the question of issuing a writ of prohibition to a court-martial has not come before it for direct adjudication, has repeatedly recognized the general rule that the acts of a court-martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts by writ of prohibition or otherwise (Dynes v. Hoover, 20 How. 65, 82, 83; Ex parte Reed, 100 U. S. 13; Ex parte Mason, 105 U. S. 696; Keyes v. U. S., 109 U. S. 336, 3 Sup. Ct. 202; Wales v. Whitney, 114 U. S. 564, 570, 5 Sup. Ct. 1050; Kurtz v. Moffitt, 115 U. S. 487, 500, 6 Sup. Ct. 148. See, also, Wise v. Withers, 3 Cranch, 331; Meade v. Deputy Marshal, 1 Brock, 324, Fed. Cas. No. 9,372; In re Bogart, 2 Sawy. 396, Fed. Cas. No. 1,596; In re White, 9 Sawy. 49, 17 Fed. 723; Barrett v. Hopkins, 2 McCrary, 129, 7 Fed. 312)."

The court also refers somewhat at length to the case of Grant v. Gould, supra.

In the case of Washburn v. Phillips, 2 Metc. (Mass.) 296, the question whether a writ of prohibition would issue to a court-martial arose, apparently for the first time, in the state of Massachusetts. The court entertained the application, but, considering that it did not appear that the court below had exceeded its jurisdiction, refused the writ. Chief Justice Shaw, in his opinion, says (page 298):

"On referring to the common law, we find that the object of the writ of prohibition is to restrain and prevent a court of peculiar, limited, or inferior jurisdiction from taking judicial cognizance of cases not within its jurisdiction. It usually issues from the court of king's bench, and is directed to the judge and parties of a suit in an inferior court, commanding them to cease from the prosecution thereof, upon a suggestion, either that the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction. 3 Bl. Comm. 112. Beyond these two grounds, it seems, the court will not interfere; and when the matter is within the general jurisdiction of the court below, and, in the conduct of the trial, they have not exceeded their authority, the court above will not, on an application for a prohibition, inquire whether they have decided right or not on the merits. Grant v. Gould, 2 H. Bl. 100; State v. Wakely, 2 Nott & McC. 410; People v. Seward, 7 Wend. 518. Such being the nature and purposes of the proceeding by prohibition, it is obvious that it can only be interposed in a clear case of excess of jurisdiction on the part of some judicial tribunal."

In the case of Swaim v. U. S., 165 U. S. 553, 17 Sup. Ct. 448, Swaim, who was an officer in the United States army, prosecuted the government in the court of claims for the recovery of pay which had been forfeited as the result of a sentence which had been imposed upon him by a court-martial. His contention was that the proceedings of the court-martial were void. His petition having been dismissed, an appeal was taken to the supreme court of the United States, which affirmed the judgment of the court below. The validity of the proceedings of the court-martial thus came directly in question. Among the objections urged against them was that oral and secondary evidence of an account was received when books of original entry were available; that evidence was admitted implicating the accused in an offense not within the charges which were on trial; that evidence was excluded tending to show the bad character of a principal witness for the prosecution; and that the court refused to hear the testimony of a material witness for the defense. Mr. Justice Shiras, in delivering the opinion of the court, says (page 561, 165 U. S., and page 451, 17 Sup. Ct.):

"It was the opinion of the court of claims that the errors so assigned could not be reviewed collaterally, and that they did not affect the legality of the sentence; and in so holding we think that court followed the authorities. Such questions were merely those of procedure, and, the court-martial having jurisdiction of the person accused and of the offense charged, and having acted within the scope of its lawful powers, its proceedings and sentence cannot be reviewed or set aside by the civil courts."

The court thus held that the errors assigned were not of a jurisdictional character, but arose upon questions which it was within the competency of the court-martial to decide; and, had the matter come before the court upon a motion for a writ of prohibition, the same reasoning would have compelled a like disposition of the question.

In the case of Thomson v. Tracy, 60 N. Y. 31, the proper office of a writ of prohibition was also considered. In giving the opinion of the court, Judge Allen says (page 37):

"A writ of prohibition is to prevent the exercise by a tribunal possessing judicial powers of jurisdiction over matters not within its cognizance, or exceeding its jurisdiction in matters of which it has cognizance. It will not lie to restrain a ministerial act. Ex parte Braudlacht, 2 Hill, 367; People v. Supervisors of Queens, 1 Hill, 195. It is a proper remedy when the inferior court either entertains a proceeding in which it has no jurisdiction, or when, having jurisdiction, it assumes to exercise an unauthorized power. Appo v. People, 20 N. Y. 531. It is a remedy provided by the common law against the encroachment of jurisdiction."

But it is unnecessary to cite further authorities with respect to the scope of this writ. It is, I think, well established that a writ of prohibition brings up questions of jurisdiction only, and will not warrant the court in interfering with the action or proposed action of the tribunal below with respect to matters of procedure upon which it has the right to pass in the due exercise of its powers. It is this very thing which, as I view it, this court is asked to do in the case at bar. And while I am of the opinion that the court has the power to issue a writ of prohibition to a military court, within the proper limits which the nature of its office imposes, the right to do so might safely be assumed in view of its forbidden use for purposes which the relator seeks to accomplish through its agency. The operative portions of the alternative writ, which I have referred to in the opening of this opinion, show that the relator seeks to control the procedure of the respondents in the inquiry which they are called upon to make. No question is raised respecting the lawfulness of the organization of the board of which they are members, or of its jurisdiction to act in the matter, but it is claimed that they propose to receive or to consider evidence not admissible in the common-law courts, that they intend to act on insufficient evidence, and that they contemplate acting on evidence of alleged offenses against military law cognizable elsewhere, and for which the relator could not be court-martialed under the laws of this state. With the exception of the last of these claims, it is, I think, perfectly clear under the authorities that none of them presents a sufficient basis for a writ of prohibition. So far as the excepted claim is concerned, if it had been addressed to charges for the trial of which a court-martial had been ordered, it may be that prohibition would run to the court on the ground of lack of jurisdiction of the subject-matter; but it is unnecessary to determine this,

inasmuch as nothing of the kind has been attempted. The relator is not to be tried for any offense committed either within or without the state, nor has a court-martial been convened for any such purpose. It is true that he has been ordered before a "board of examination," as it is called, but in its nature, purpose, and scope of inquiry such a board is radically different from a court-martial. Although performing functions which, in a broad sense, may be characterized as judicial, it cannot be called a court. It is not included under the enumeration and definition of military courts contained in article 7 of the Military Code (chapter 212, Laws 1898), and while, by the section of the Code which creates it, it is accorded "the powers of courts of inquiry and courts-martial," it is plain that the powers thus referred to do not relate to the general jurisdiction of the board, but only to the more efficient conduct of the business elsewhere expressly confided to it for its action. A court-martial, however, is really a criminal court. It acts upon offenses against the people, proceeds upon formal charges in the nature of an indictment, and, after hearing the parties, renders a judgment of guilty or not guilty, and, if the former, imposes a sentence purely punitive in its character. But a board of examination is an executive agency of an entirely different character. Section 64 of the Military Code (chapter 212, Laws 1898) provides that the governor may, whenever he deems that the good of the service requires it, order any commissioned officer before a board of examination, to consist of not less than three nor more than five general or field officers, which board "shall examine into the moral character, capacity, and general fitness for the service of such commissioned officer," and record and return the testimony taken and a record of its proceedings. If the findings of the board are unfavorable to such officer, and be approved by the governor, "he shall be discharged from the service." It will thus be observed that the board so authorized does not proceed upon specific charges against the officer, nor is its function confined to the investigation or trial of offenses against military law. Fitness for the service is the sole object of the inquiry, and it is, of course, evident that this may be found not to exist in cases where there is no moral delinquency or violation of law on the part of the officer. In no sense whatsoever is it within the competency of the board to impose any punishment or to redress any wrong, and its findings do not of themselves carry with them any opprobrium, except in so far as the particular thing upon which the finding of unfitness may be predicated is of itself reprehensible. In short, the board of examination is an agency designed to enable the governor to properly discharge his responsibilities as commander in chief of the state militia. Whether such a board shall be convened rests, by the very terms of the statute, in his discretion, and is based upon his judgment as to what the needs of the service require, and the findings and recommendations of the board become operative only when they have received his approval. It will also be noticed that the range of inquiry permitted to the board is very wide. It may consider the moral character of the officer, his capacity to fill the office, which would include physical as well as mental qualifications, and also his general

fitness for the service, which would cover the possession of all of those soldierly attributes which, according to military standards, are deemed essential to efficiency in command, both in war and peace. Whatever evidence may tend to prove the absence of any of these attributes is plainly competent, without regard to the place where, or the conditions with respect to service under which, the acts sought to be proven took place. Whether a court-martial under the state law would have jurisdiction to try the officer for an offense arising out of such acts is an entirely different and irrelevant consideration. The question before the board of examination is not whether the officer, by his conduct in a specific case, has been guilty of a violation of military law for which he should be punished, but whether such conduct tends to show the existence or lack of personal qualities which unfit him for the proper discharge of the responsibilities of his office.

Assuming that a writ of prohibition would run to such a body as this in any case,—which is at least very doubtful,—it is, I think, manifest that the limitations upon its office, which I have endeavored to show exist in its relation to courts-martial and other inferior courts, would apply with still greater force to a board of examination, considering its nature and the function which it is required to perform. Here, if anywhere, the largest freedom which may be consistent with proper investigation of the matters to be passed upon should be accorded, and the right to determine what evidence should be received and what weight should be given to it should, and, in my opinion, does, belong to such a body. If the evidence is improper or inconclusive, or if the findings of the board are not fairly supported by satisfactory proofs, it must be assumed that the governor, who is the only reviewing authority provided for by law, will withhold his approval of its action. I am therefore of the opinion that the relator has failed to make out a case for the issuance of the writ in question, and that the proceedings should be dismissed.

Writ dismissed.