PEOPLE ex rel. PATRICK v. FITZGERALD, Surrogate, et al.

(Supreme Court, Appellate Division, First Department. June 6, 1902.)

1. PROHIBITION—RESTRAINING PROBATE OF WILL.

Separate proceedings to probate two instruments, each purporting to be the last will of the testator, were commenced before the surrogate having jurisdiction, and the proponent of the later will was unable to prove its execution, for the reason that the witnesses thereto, who had been indicted for perjury and forgery in reference to the will, claimed their privilege, and refused to testify. The proceedings to probate the other will came on for hearing, and the proponent established its execution, and introduced evidence to show that the later will was a forgery. The attorney for the proponent of the later will appeared in the proceeding,

76 N.Y.S.—55

and stated that he intended to offer evidence against the probate of the earlier will, but did not do so. *Held*, that the acts of the surrogate in refusing to adjourn the separate proceeding till the criminal prosecution against the witnesses were terminated, and in threatening to dismiss the proceeding to probate the later will, and to admit the first to probate, were not such an abuse of power on his part as to authorize a writ of prohibition, which only lies when jurisdiction is exceeded.

**2. SAME.**

The fact that the executors named in the earlier will resided in a sister state, and might remove the property thereto, and that the will provided that they should not give bonds, was not an objection to the jurisdiction of the surrogate to admit the will to probate, and did not authorize a writ of prohibition restraining such action.

Appeal from special term, New York county.

Application for a writ of prohibition by the people, on the relation of Albert T. Patrick, against Frank T. Fitzgerald, as surrogate, and others. From an order dismissing the alternative writ and denying a writ absolute, the relator appeals. Affirmed.

The alternative writ shows that proceedings have been duly instituted and are pending undetermined in the surrogate's court of the county of New York for the probate of two alleged wills of William M. Rice, deceased, bearing date, respectively, on the 26th day of September, 1896, and 30th day of January, 1900; that the subscribing witnesses to the last will have been indicted for forgery and perjury concerning the same, and upon that ground have refused to testify with reference to the execution thereof, and that the surrogate has sustained their claim of privilege; that the relator is the proponent of the last will, and that the surrogate's court, "without taking such and other evidence, is about to render a decree admitting to probate said will of 1896, and dismissing the proceedings for the probate of said will of 1900." The alternative writ required the respondent and the surrogate to show cause why they should not be absolutely enjoined and restrained from taking further proceedings with reference to the probate of either of said wills until after the trial of these indictments against the subscribing witnesses or until their evidence can be lawfully obtained. The returns raise no issues of fact, but challenge the sufficiency of the moving papers to warrant the granting of an absolute writ. The alternative writ was granted on the affidavits of the attorney for the relator, of the subscribing witnesses who have been indicted, and of one Schoflin and one Cantwell. The affidavit of the attorney shows, among other things, that the testator died on the 23d of September, 1900, leaving property worth more than $5,000,000; that three executors are named in each will, two being the same, John D. Bartine being the third in the first and the relator being the third in the last; that the will of 1896 was filed on the 12th day of October, 1900, and the other on the 30th of November thereafter, and applications for their probate were duly made by Bartine and the relator respectively; that the first will lei the bulk of the estate to the William M. Rice Institute for the Advancement. of Literature, Science, and Art, a corporation of the state of Texas; that in the second will this corporation was given a legacy of a quarter of a million, and the bulk of the estate was left to the relator; that the relator and the heirs and next of kin of the testator filed objection to the probate of the first will and Bartine and others filed objections to the probate of the second will: that the executors of the first will are all nonresidents, and it is provided that they shall not be required to give security; that, as the result of criminal proceedings instituted against the relator for the murder of the testator and for forgery in connection with the second will, he was indicted for such murder and forgery on the 25th day of April, 1901, and that contemporaneously therewith criminal proceedings were instituted against the subscribing witnesses to the last will for perjury in testifying concerning its execution in the criminal proceedings against the relator and for forgery in connection with it also; that the relator has been convicted of murder, and an appeal from such conviction is pending in the court of appeals; that the

indictments against the subscribing witnesses have not been brought to trial; that on the 22d day of June, 1901, before any evidence was taken, the surrogate adjourned these probate proceedings on account of the pendency of said criminal proceedings until November, 1901; that on the 23d of November last a settlement was made between heirs and next of kin and the said William M. Rice Institute by which their objections to the probate thereof were to be withdrawn and said institute should pay them about half a million dollars; that two days later the hearing on the probate of said wills came up, and the subscribing witnesses to the first will were examined, and the hearing adjourned until the 9th of December, but the making of the settlement was not disclosed and the objections of the heirs and next of kin were not withdrawn until the 7th day of January, 1902; that no further proceedings were taken in the surrogate's court until the 16th day of April, 1902, after the trial and conviction of the relator; that on said last-mentioned day the present attorney for the relator, who had only recently been retained, had been previously informed by the counsel who theretofore represented the relator on the probate proceedings that a hearing would be forced at that time, applied for an adjournment on the ground of the pendency of the criminal proceedings against the relator; that the subscribing witnesses who had been indicted would claim their privilege, and refuse to testify, and that he was not familiar with the various litigations, and was not prepared to proceed; that the surrogate denied the motion, but stated that the right to cross-examine the subscribing witnesses to the first will, who had given the formal proof as to its execution, had been reserved to the relator; that the attorney for the relator, in applying for said adjournment, stated that he did not waive his right to cross-examine said witnesses; that he then called the subscribing witnesses who had been indicted, and upon being sworn and interrogated concerning the execution of the will they refused to testify, upon the ground that their answers might tend to incriminate them, and the surrogate sustained their claim of privilege; that thereupon he contended that the surrogate had no power to proceed to a decree admitting either will to probate, and asked leave to submit a brief on the question, whereupon the surrogate stated, "That would be a matter that would come up in the final argument, when the whole case is in;" that thereafter, on six hearings, from April 16th to May 1st, the counsel for the proponents of the first will called and examined witnesses as to their opinion of the genuineness of the signature to the last will; that while cross-examining these witnesses he had handwriting experts in court, whom he announced that he intended to call as witnesses in rebuttal later; that he asked that one of these witnesses be recalled, or that his testimony be stricken out, and on the 1st day of May announced that he would apply "in due course" for an order to take the deposition of the witness who had departed from the state; that on the last-mentioned day counsel for the proponents of the first will moved, at the close of the examination of the last witness called by the proponents, for a decree admitting to probate the first will, and dismissing the petition for the probate of the last will; that he objected to this motion, and claimed the right to call witnesses in rebuttal, and stated that he expected "in due course of the proceedings" to introduce testimony under the objections filed by the relator to the first will, but that the surrogate announced that he was prepared to admit the first will to probate, and dismiss the proceedings for the probate of the last will for a failure of proof on the part of the proponents of the factum of the will of 1900; that the counsel for the proponents offered to withdraw his motion if the witnesses would withdraw their privilege, and testify, and in this the surrogate acquiesced; that after a protracted argument the surrogate consented to adjourn the proceedings until the 10th day of May, 1902, stating that if on the adjourned day the subscribing witnesses still claimed their privilege, he would admit the first will to probate, and deny the probate of the second will, and decline to take further testimony, notwithstanding the fact that the relator's attorney asked the right to call witnesses who would testify to the genuineness of the signature to the last will, and a witness who would testify that the testator informed him that he was going to and had made a new will; that he in good faith intends to contest the first will, and to show the validity of the second will; that, in his opinion,

the first will is void, and the Rice Institute cannot take under the laws of Texas; that, if the first will is admitted to probate, the property will be removed from the jurisdiction of the court, and that the relator will be without remedy; and that the proposed action of the surrogate is in excess of his jurisdiction. The extract from the stenographer's minutes quoted in the affidavit of the attorney for the relator does not show that he informed the surrogate that he desired to introduce further evidence. These are the only material facts shown.

Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

John C. Tomlinson, for appellant.
Wm. B. Hornblower, for respondents.

LAUGHLIN, J.    The writ of prohibition only lies where there is a want of jurisdiction, or where a court, judge, or other tribunal is proceeding in excess of the jurisdiction conferred.    Appo v. People, 20 N. Y. 531; People v. Sherman, 66 App. Div. 231, 72 N. Y. Supp. 718; People v. Doyle, 28 Misc. Rep. 411, 59 N. Y. Supp. 959; Id., 44 App. Div. 403, 60 N. Y. Supp. 1088; Id., 162 N. Y. 659, 57 N. E. 1122; Thomson v. Tracy, 60 N. Y. 31; People v. Nichols, 79 N. Y. 582; People v. Petty, 32 Hun, 443; People v. Fitzgerald, 15 App. Div. 559, 44 N. Y. Supp. 556; Smith v. Whitney, 116 U. S. 167, 6 Sup. Ct. 570, 29 L. Ed. 601.    We find it stated by some judicial writers, following the old English cases, that the writ may also be issued to prohibit the court, judge, or other tribunal from proceeding contrary to "the general law of the land."    This doubtless means nothing more than passing upon personal or property rights without a hearing.    It embraces cases where a petition, pleading, or objection is duly served or filed in accordance with the settled law or practice, and a court, judge, or other tribunal having jurisdiction, and whose duty it is to hear and determine the matter, is proceeding to a determination without a hearing.    Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215, affirming 145 N. Y. 126, 39 N. E. 841, 39 L. R. A. 449.    That, I take it, would be an excess of jurisdiction, and I do not understand that the phrase "contrary to the general law of the land," as thus used by the courts, means anything more than an excess of jurisdiction.    It is not the office of a writ of prohibition to regulate the admission or rejection of evidence or the proceedings before an inferior court, judge, or other tribunal having jurisdiction of an action or proceeding.    Where jurisdiction exists, errors of law or procedure must be corrected by such appeal or other review as the law affords. People v. Nichols, supra; People v. Doyle, supra; People v. Petty, supra; People v. Fourth Judicial Dist. Court in City of New York, 13 Civ. Proc. R. 134.

If the relator's right to the absolute writ depends upon the sufficiency of the facts recited in the alternative writ, as is the case in mandamus proceedings, it scarcely needs any argument to show that those facts are insufficient. The alternative writ merely recites that the subscribing witnesses to the will of 1900, who have been indicted for perjury, have to testify to the execution of that will, and that the surrogate has sustained their claim of privilege, and is about to dis-

miss the proceedings for the probate of that will, and admit the other to probate. The surrogate and respondent were required to show cause against an absolute writ enjoining both probate proceedings until the testimony of these witnesses is obtained. It is clear that the surrogate has jurisdiction. What adjournment, if any, should be granted, rests in the sound discretion of the surrogate's court, subject only to review by direct appeal to the appellate division. There is no presumption of law that either will is valid, and neither can be admitted to probate without competent proof of its due execution. In re Cameron's Estate, 47 App. Div. 120, 62 N. Y. Supp. 187, affirmed 166 N. Y. 610, 59 N. E. 1120; In re Lasak, 131 N. Y. 624, 30 N. E. 112. The relator is not entitled, as matter of strict legal right, to have the probate proceedings adjourned until the disposition of either of the criminal prosecutions. In re Fleming, 5 App. Div. 190, 39 N. Y. Supp. 156; Cook v. Ellis, 6 Hill, 466, 41 Am. Dec. 757; Quimby v. Blackey, 63 N. H. 77; Com. v. Bliss, 1 Mass. 32; People v. Westbrook, 61 How. Prac. 138. The verdict or judgment in the criminal cases would not be res adjudicata on any question in the probate proceedings. Nor is the relator, as a matter of strict legal right, entitled to have the probate proceedings adjourned indefinitely to enable him to obtain this testimony. The surrogate's court undoubtedly has power to postpone these probate proceedings until after the trial on the indictments against the witnesses; but, if this discretion to adjourn or refuse the adjournment be erroneously exercised or abused, the remedy is by appeal, and not by resort to the writ of prohibition.

It is not shown in the alternative writ that the first will has not been duly proved. The surrogate's court has jurisdiction to determine whether it has given the relator, who is the proponent of the will of 1900, a reasonable opportunity to make proof of its due execution, and whether the proceedings should be dismissed or probate denied for failure of proof, or continued to afford him an opportunity to present further evidence. The dismissal or denial of probate for failure of proof will not be a dismissal upon the merits. It will merely dispose of the present proceedings, and be a determination that no satisfactory proof that the alleged will of 1900 is the last will and testament of the testator has been presented.

It seems to be assumed by the counsel for the respondent, as well as the appellant that the right to the absolute writ depends not on the recitals in the alternative writ, but on the affidavits upon which it was granted; and, without stopping to examine the question, that may be assumed for the purpose of this appeal. We think the affidavits presented by the relator fail to show sufficient facts to entitle him to the absolute writ. It thereby appears that the will of 1896 has been duly proved, and that evidence has been given tending to show that the later will is a forgery. When the relator's present attorney first appeared in the probate proceedings the surrogate informed him that the right to cross-examine the subscribing witnesses to the first will had been reserved to the relator; but it does not appear that he asked to examine them then or on any of the subsequent adjourned hearings. Nor does it appear that the relator at any time offered any evidence with reference to the validity of either will, or asked to have his wit-

nesses examined. It does appear that he informed the court that he intended to produce evidence, but that is not sufficient to afford a basis for issuing an absolute writ of prohibition against the surrogate upon the theory that, if the relator does in the future offer competent evidence, it will be rejected, even though his right to introduce testimony has not been waived or lost. There is nothing to justify the inference that the learned surrogate has not acted judicially, and with perfect fairness, throughout the probate proceedings. His remarks indicate that he thinks it is about time that the hearings on these proceedings should be concluded, but the inference that the surrogate contemplates depriving the relator of any of his legal rights is not warranted. It may be that the surrogate entertains the belief that the relator is responsible for the refusal of the subscribing witnesses to testify. It appears that these witnesses have testified with reference to the execution of this will on the criminal proceedings instituted against the relator. The entire record of these proceedings and of the probate proceedings are not before us, and we cannot say that there is nothing to warrant such an inference. However this may be, the learned surrogate was right in sustaining the privilege claimed by the witnesses. People v. Nussbaum, 55 App. Div. 245, 67 N. Y. Supp. 492; People v. Mayer, 71 Hun, 182, 24 N. Y. Supp. 621; People v. Forbes, 143 N. Y. 219, 38 N. E. 303.

It is contended by the relator that, inasmuch as the executors of the will of 1896 are all nonresidents, if that will is admitted to probate they may remove the property from the state before he is able to establish the validity of the will of 1900. This does not go to the jurisdiction of the surrogate. Moreover, notwithstanding the fact that the will relieves the executors from giving a bond, the surrogate is authorized, on account of their nonresidence, to require security to be given; and there is no reason to apprehend that the rights of the relator will not be properly protected. Code Civ. Proc. §§ 2636–2638; In re Demarest's Estate, 1 Civ. Proc. R. 302.

If the relator has not lost his rights by failing to introduce his evidence on the objections filed to the probate of the will of 1896, and on his petition for the probate of the will of 1900 at the proper time, he will doubtless be afforded an opportunity to do so. Counsel for the relator is doubtless right in his contention that the relator is entitled, on account of his claim as executor of the will of 1900 and as devisee thereunder, to contest the validity of the will of 1896, unless he has lost his rights by not doing so at the proper time. Code Civ. Proc. § 2617. While he may be unable to establish the validity of the will of 1900 in the manner required by the statute to authorize its probate, it by no means follows that he is not interested in the estate. He may be able to establish the validity of the will by common-law proof which would be accepted in an action in the supreme court concerning the ownership of the realty of the testator at least. Upton v. Bernstein, 76 Hun, 516, 520, 27 N. Y. Supp. 1078; In re Keleman, 126 N. Y. 79, 26 N. E. 968. It does not follow, therefore, that, because he is unable to have the will of 1900 admitted to probate, he is not interested in the estate. But there is no evidence that the surrogate has ruled that the relator is not entitled to contest the first will.

We are asked to construe a remark of the learned surrogate that the proponents of the will of 1896 were entitled to a decree admitting it to probate by default as indicating an intention on his part to enter a decree that will recite that the relator has defaulted, and thereby preclude him from appealing. The relator has appeared in the proceeding, and will be entitled to appeal from any decree that may be entered. Section 2568 of the Code of Civil Procedure relates only to a default in appearing. The learned surrogate evidently meant by default the failure of the relator to produce evidence at the proper time, and the inference is not justified that he contemplates entering a decree reciting that it was made on the relator's default.

It is suggested by counsel for relator that, if the writ be refused, it will be taken as an indication that in the opinion of this court the surrogate may properly dismiss the proceedings for the probate of the will of 1900, and admit to probate the will of 1896. That would be an unwarranted inference. We refrain from expressing any opinion on questions of evidence, practice, procedure, and discretion until they are properly before us by appeal. We merely hold that the surrogate has jurisdiction, and is not proceeding in excess of his jurisdiction in a manner to justify issuing an absolute writ of prohibition.

The alternative writ was therefore properly quashed and dismissed, and an absolute writ properly denied. The order should be affirmed, with $50 costs and disbursements, and the surrogate and respondent are authorized to proceed in the matter of probating said wills as if the alternative writ had not been issued. All concur.

INGRAHAM, J. I fully concur in the opinion of Mr. Justice LAUGHLIN, and simply wish to add that, in my opinion, the provision in the order appealed from that the stay of proceedings contained in the alternative writ of prohibition be continued pending an appeal to the appellate division of this court from the final order in this proceeding is entirely unauthorized. A writ of prohibition prohibits a court from proceeding in a matter then before it. The only authority that the supreme court has to restrain a court from so proceeding is by a writ of prohibition. The court below granted an alternative writ, but upon a return being filed it refused to grant an absolute writ. The order refusing the absolute writ was a final order, under section 2100 of the Code of Civil Procedure, which provides that, "where a final order is made against the relator it must authorize the court or judge and the adverse party to proceed in the action, special proceeding or matter as if the alternative writ had not been issued." Neither the Code nor the practice authorizes the special term, when a final order refusing an absolute writ is entered, to prohibit a court from proceeding by order, either pending an appeal from the order refusing the absolute writ or for any other period of time. The special term was required by the provisions of the Code applicable to a writ of prohibition, upon the return being filed, to determine whether or not an absolute writ of prohibition should issue. Upon its determination that such an absolute writ should not issue, the final order abrogates the alternative writ, and the prohibition contained in that writ is at an end.

The supreme court was then without jurisdiction to continue the prohibition contained in the alternative writ by order.

I think it necessary to make this statement to avoid the implication that the practice adopted by the special term is in any sense approved.