(81 App. Div. 223.)

## In re RICE'S WILL (two cases).

### (Supreme Court, Appellate Division, First Department.   March 20, 1903.)

**1. PROBATE PROCEEDINGS—ADJOURNMENTS—ABUSE OF DISCRETION BY SURRO-
GATE.**

   The proceedings for the probate of two alleged wills of a decedent leav-
ing a large estate had been adjourned numerous times at the request of
the proponent of one will, and over the objections of the proponent of the
other.   These adjournments had mainly been obtained on the ground that
the proponent requesting them had been indicted for the murder of the
testator, and it was not till after he had been tried and convicted, and
after the proceedings had been pending more than a year, that the sur-
rogate refused a further adjournment.   *Held*, that the surrogate did not
improperly exercise his discretion in refusing a further adjournment, even
though the witnesses to the will offered by proponent desiring the ad-
journment were under indictments for perjury and forgery, based on
evidence they had given at the criminal trial as to the genuineness of
testator's signature to this will.

**2. APPEAL—RULING ON EVIDENCE—HARMLESS ERROR.**

   Although evidence stricken out by the surrogate's court might have
been admissible, yet if the appellate court comes to the conclusion that,
even with that evidence in the record, the decree of the lower court
should be affirmed, the error in striking out the evidence was harmless.

**3. APPEAL FROM SURROGATE—EXCLUDED EVIDENCE.**

   Under Code Civ. Proc. § 2586, providing that on an appeal from a sur-
rogate on the facts the appellate court has the same power to decide
questions of fact which the surrogate had, and may receive further tes-
timony, the appellate court may consider evidence which was stricken
out by the surrogate, but which is contained in the printed record before
the court.

**4. WILL—GENUINENESS OF SIGNATURE.**

   Where, in a will contest, it was shown that testator was upward of 80
years of age when the alleged will was executed, and that his four al-
leged signatures to the will corresponded almost exactly so that they
would superimpose one another, a similarity which did not appear in con-
ceded genuine signatures introduced, these facts, in connection with other
evidence bearing thereon, warranted the surrogate in finding that the
signatures were not genuine, but simply tracings from a genuine signa-
ture.

Appeal from Surrogate's Court, New York County.

Proceeding in the Surrogate's Court for the probate of two wills
of William M. Rice, deceased.   From a decree admitting one will
and refusing probate of the other, Albert F. Patrick appeals.   Af-
firmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN,
O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

John C. Tomlinson, for appellant.
William B. Hornblower, for respondent.

McLAUGHLIN, J.   On the 23d of September, 1900, William M.
Rice, upwards of 80 years of age, then a resident of the county of
New York, died, leaving, as his only heirs at law and next of kin,
one brother, two sisters, and descendants of deceased brothers and
sisters.   On the 12th of the following month John D. Bartine filed
in the office of the surrogate of the county of New York a paper
dated September 26, 1896, which purported to be the last will and tes-

tament of Mr. Rice, together with a petition asking for its probate, upon which citations were issued to the necessary parties. The executors named in this paper were William M. Rice, Jr., John D. Bartine, and James A. Baker, Jr., and the residuary legatee and devisee was "the William M. Rice Institute for the Advancement of Literature, Science and Art, a corporation domiciled in the city of Houston, Harris county, Texas." Upon the return of the citations, objections to the probate of this instrument were made by the heirs at law and next of kin of the deceased, which, however, were subsequently withdrawn, and no one, except the appellant herein, objected to the probate of that instrument or questioned in any way the decree of the surrogate with reference thereto. On the 30th of November, 1900, Albert T. Patrick, the appellant on this appeal, filed a paper dated June 30, 1900, in the office of the surrogate of the county of New York, which purported to be the last will and testament of William M. Rice, together with a petition asking for the probate of the same. The executors named in this paper were William M. Rice, Jr., James A. Baker, Jr., and Albert T. Patrick, and the latter was the residuary legatee and devisee. Citations were issued upon Patrick's petition, directed to the necessary parties, on the return of which he filed objections to the probate of the alleged will of 1896, and Bartine filed objections to the probate of the alleged will of 1900. Both proceedings were thereafter consolidated, and the issues raised by the petitions and objections came on for trial before the Surrogate's Court on the 8th of April, 1901, when Patrick asked for a postponement of the trial until after the hearing and determination of criminal charges which had been made against him, and Meyers and Short, the witnesses to the alleged will of 1900. The application was granted, and thereafter, from time to time, various applications for adjournments were made and granted until the 16th of April, 1902, when the surrogate refused to grant any further postponement, and then the proceeding was finally heard. Patrick, in the meantime, had been tried and convicted of murder in the first degree for the killing of Rice, and an appeal had been taken from the judgment of conviction, which was then pending, and indictments for perjury and forgery had been found against Meyers and Short, based upon testimony which they had given in the criminal proceedings against Patrick, to the effect that the signature of Rice to the will of 1900 was genuine, upon which they had been arrested, but a trial had not been had.

The witnesses to the 1896 will were called, and their testimony was to the effect that that instrument was executed by William M. Rice, deceased, as and for his last will and testament, in the manner required by statute. Their testimony was uncontradicted, and there does not seem to have been any contest between the parties as to the fact that this instrument was duly executed, or that its execution was the result of undue influence, or that the testator did not have testamentary capacity. The real contest, however, turned upon the genuineness of the signature of Rice to the will of 1900, and as bearing upon that question much testimony was introduced by the respective parties. The witnesses Meyers and Short were called by Patrick, the proponent of that will, but after being sworn they each refused to answer any ques-

tions put to them touching the genuineness of Rice's signature or the validity of that instrument, upon the ground that their answers might tend to incriminate them. The privilege which they claimed in this respect was held by the surrogate to be a valid one, and they were excused from testifying, and thereafter witnesses were produced who gave testimony to the effect that their signatures upon that paper were genuine. This testimony, however, was received conditionally, and at the close of the trial the same was stricken out. At the conclusion of the trial the surrogate found in favor of the will of 1896, and against the will of 1900, and a degree was subsequently entered admitting the former to probate and denying probate to the latter, and from this decree Patrick has appealed.

In the voluminous brief presented by his counsel numerous errors are assigned, but which, in fact, though presented in different forms, constitute but two, and may be so considered. These are that the surrogate erred (1) in refusing to postpone the probate proceedings until after the criminal proceedings instituted against Meyers and Short had been disposed of, and (2) in striking out certain testimony as to the genuineness of their signatures on the alleged will of 1900.

As to the first, it must be conceded that the surrogate had jurisdiction to try the proceeding, and for that purpose he had the power to adjourn from time to time as occasion required, and whether an adjournment should be granted or refused rested in his sound discretion, subject, of course, to review by this court for an abuse of the discretion. This is but another way of stating the general rule, which is that adjournments are in the discretion of the trial courts. Paine v. Aldrich, 133 N. Y. 544, 30 N. E. 725; Borley v. Wheeler & Wilson Sewing Machine Co. (Sup.) 12 N. Y. Supp. 45. Nor does the fact that criminal proceedings were pending either against Patrick, the proponent of the 1900 will, or against Meyers and Short, the witnesses to it, take the case out of the general rule. Matter of Fleming, 5 App. Div. 190, 39 N. Y. Supp. 156; Cook v. Ellis, 6 Hill, 466, 41 Am. Dec. 757; Quimby v. Blackey, 63 N. H. 77; Commonwealth v. Bliss, 1 Mass. 32; Boston & Worcester Corporation v. Dana, 1 Gray, 83. The conclusion reached in the criminal proceedings would not have any effect on any of the questions before the surrogate. People ex rel. Patrick v. Fitzgerald, 73 App. Div. 339, 76 N. Y. Supp. 865. The appellant had no inherent right to have the proceedings adjourned, nor do we think, upon the facts presented, that the surrogate improperly exercised his discretion in refusing to adjourn. In this connection it must be borne in mind that the proceeding for the probate of the two wills had been pending over a year; that numerous adjournments had been taken at the request of the proponent of the 1900 will, and against the objection and protest of the proponent of the 1896 will; that these adjournments were procured mainly upon the ground that the proponent of the 1900 will had been indicted for murder, and that the surrogate, until the indictment had been disposed of, ought not to enter upon an investigation which would call forth many of the facts which would be called out upon the trial of the indictment. The counsel then acting for the proponent of the 1900 will, in order to procure one or more adjournments, stipulated in open court, as appears from

the record, that, if an adjournment could be had until after the indictment of Patrick for murder had been tried, then he (Patrick) would proceed with the proceedings before the surrogate, and would not ask for any further or other adjournments.   The fact that the indictment for murder was pending seems to have impressed the surrogate, and we think properly, with the propriety of adjourning the probate proceedings until after that had been tried.   Adjournments were taken accordingly, and it was not until after the trial of that indictment that the surrogate refused to further adjourn the proceedings.

It might well be urged that a further adjournment ought not to have been taken, inasmuch as it would have been a violation of the stipulation.   But, irrespective of this, we think that the surrogate properly refused to further adjourn the proceeding.   Here was a large estate.   The proponent of the 1896 will, if right in his contention that that was the last will and testament of Rice, and that the 1900 will was a forgery, was entitled, in view of the duties cast upon him, to administer the estate of his testator according to his wishes, and to that end letters testamentary should be issued to him and the other executors named therein.

Clearly, the fact that indictments were pending against the witnesses to the alleged will of 1900 was insufficient to postpone indefinitely the probate proceedings.   When these witnesses should be tried under the indictments found against them rested entirely with the district attorney of the county where the same had been found, subject, of course, to a motion to dismiss the indictment for lack of prosecution.   It is not claimed that the proponent of the 1896 will had sought to control in any way the action of the district attorney, other than to furnish evidence sufficient to justify an indictment or conviction.

Upon this branch of the case, therefore, we conclude that no error was committed by the surrogate in refusing to further postpone the proceedings.

As to the second, what the appellant's counsel claims is that the surrogate erred in striking out this testimony (1) because it was competent as bearing upon the question as to whether the 1900 will should be admitted to probate; (2) because it was competent as tending to establish a revocation of the will of 1896; and (3) because it was competent to be considered in connection with the testimony of the handwriting experts called by Patrick to contradict the handwriting experts called by the proponents of the 1896 will.

The conclusion at which we have arrived renders it unnecessary to consider or pass upon the merits of the questions thus raised.   It may be assumed that the testimony stricken out was admissible for some one or more of the reasons assigned, and for that reason that the surrogate erred in striking it out; but it does not follow, because such error was committed, that the decree of the surrogate's court was wrong.   On the contrary, if this court comes to the conclusion that, with this testimony in, the same result must be reached, then the error was harmless.   All of the testimony stricken out is printed in the record before us, and we insert it again in the record as evidence, and now consider it, and after such consideration we think that the conclusion arrived at by the surrogate was right.   We have a right to do this, be-

cause we sit more as a trial court upon the facts than as a court of review. Section 2586, Code Civ. Proc. The section of the Code just cited provides that, where an appeal is taken from a decree of a surrogate's court upon the facts, the appellate court has the same power to decide the questions of fact which the surrogate had, and it may, in its discretion, receive further testimony or documentary evidence and appoint a referee. The court thus could, if necessary, call the witness and have him give again this testimony; but, as it is already in the record, this would be an idle ceremony.

In Clapp v. Fullerton, 34 N. Y. 190, 90 Am. Dec. 681, it was held that the admission of improper evidence on a hearing before the surrogate would not justify a reversal of the decree if the facts established by legal and competent evidence were sufficient to uphold it.

In Horn v. Pullman, 10 Hun, 473, the late General Term held, where competent evidence was rejected by the surrogate, that the court sitting in review of his action should inquire, if the evidence rejected had been received and a finding in conformity therewith had been had, whether the court would affirm the decree. If it would not, then the decree should be reversed by reason of the rejection of the evidence; otherwise, the evidence should be disregarded. This case was affirmed by the Court of Appeals in 72 N. Y. 269, the court saying, referring to the evidence which had been rejected: "Assuming this evidence to be admissible, * * * we think the conclusion does not call for a reversal of the decree. The case was not made out on the proof taken, and the result, we think, would not have been changed if the evidence offered had been admitted." See, also, Matter of Hardenburg's Will, 85 Hun, 588, 33 N. Y. Supp. 150.

We therefore consider the testimony thus stricken out as in the case, and, weighing it with the other testimony and evidence adduced at the trial, it clearly and conclusively appears, as it seems to us, that the alleged will of 1900 was not the will of William M. Rice, deceased; that the signatures on that will are not his genuine signatures; that the same are simply tracings made from a genuine signature; and the findings of the surrogate to that effect, and the decree made in pursuance thereof, are the only ones which could have been made.

It is unnecessary to review the evidence or state the reasons which have induced us to reach this conclusion. It may not, however, be out of place to call attention to one piece of evidence bearing on this subject. The name of William M. Rice appears four times upon the alleged will of 1900, and upon a critical examination of these four signatures it will be found that they correspond almost exactly—a coincidence which could not possibly happen in the case of four genuine signatures of a person upwards of 80 years of age; and for this reason it does not need the testimony of experts to demonstrate that these signatures were not genuine, but tracings. The resemblance in each is so striking that it cannot help but be observed upon a bare inspection, and if a measurement be made from any given point in one it will be found to correspond to the merest fraction of an inch in the other; in other words, each signature will superimpose the other—a similarity which does not appear in the concededly genuine signatures introduced in evidence, and which, from the very nature of things,

could not occur. This fact, taken in connection with the other evidence bearing upon the same subject, is of such a character as to irresistibly lead to the conclusion that, had the testimony which was stricken out remained in, the surrogate's conclusion would have been the same, and therefore the error was entirely immaterial and could not, by any possibility, have injured the appellant.

No question was raised but that the will of 1896 was the last will and testament of William M. Rice, deceased, unless the same had been revoked by the will of 1900; and, the proponent of that will having failed to sustain the burden which rested upon him of proving such revocation, the surrogate did the only thing that he could do, viz., admit the 1896 will to probate, and refuse to probate the will of 1900.

We have examined the other errors complained of, but do not deem them of sufficient importance to consider them here. It follows, therefore, that the decree of the surrogate is right, and should be affirmed, with costs. All concur.