VENUTO v. LIZZO.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

1. NEW TRIAL (§ 35*)—RULINGS AT TRIAL—RECEPTION OF EVIDENCE—EXPERTS.

Where, in an action on notes purporting to have been signed by defendant's intestate, defendant undertook to prove by expert witnesses that the signatures were forged, the action of the court in permitting constant objections to the testimony of the experts, disclosing their reasons for their opinions that the signatures were forged, and generally sustaining the objections and striking out the statements of the experts, so that the experts were unable to give connected reasons for their opinions, necessitated a new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 51–55; Dec. Dig. § 35.*]

2. EVIDENCE (§ 566*)—OPINION EVIDENCE—EXPERT TESTIMONY—HANDWRITING.

The testimony of a handwriting expert as to the genuineness of a signature is admissible, and the expert is entitled to give his reasons for his opinion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2390; Dec. Dig. § 566.*]

3. TRIAL (§ 296*)—INSTRUCTIONS—ERRORS—CURE BY OTHER INSTRUCTIONS.

The error in an instruction, in an action on a note defended on the ground that the signature was forged, that the burden was on defendant to establish the forgery by evidence outweighing all the other evidence, is not cured by a subsequent charge that plaintiff must establish by a preponderance of the evidence that the signature was that of the maker, and that the jury are not to determine whether plaintiff forged the signature, but whether the maker signed the note.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713; Dec. Dig. § 296.*]

Appeal from Special Term, New York County.

Action by Joseph Venuto against Filomena Lizzo, as administratrix of Antonio Lizzo, deceased. From an order denying a motion to set aside the verdict for plaintiff and for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Joseph W. Middlebrook, for appellant.
Charles L. Hoffman, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MILLER, J. The action is brought upon two promissory notes, purporting to have been made by the defendant's testator, Antonio Lizzo, one for $1,000, dated October 4, 1907, payable to the order of the plaintiff six months from date at the Mechanics' & Traders' Bank, and the other for $3,000, dated at Somma, Naples, February 6, 1908, payable to the order of the plaintiff six months from date at the Mechanics' & Traders' Bank. The plaintiff produced the notes upon the trial and called a witness, who had been paying teller of the Mechanics' & Traders' Bank, where the said Lizzo had had an account for several years. The witness testified that he knew Lizzo; that, in his position as paying teller, he had frequently had occasion to pass upon the latter's signature on checks; and that the signatures to the notes in question were in his handwriting. The defendant then undertook to prove that the signatures were forgeries. When the defendant rested, the plaintiff was called as a witness, and was permitted without objection to testify to the circumstances under which the notes were given. In brief, his story was that, when he was 14 years old, which was in the year 1902, Lizzo took him as an apprentice to teach him the trade of a stone mason; that he became a regular mason when he was 16 years of age and worked for Lizzo in that capacity for one year; that he then became Lizzo's foreman and worked in that capacity until the fall of 1907; that, during that time Lizzo had paid him no regular wages, but had given him small sums each week for pocket money and other larger sums at intervals for his personal expenses. He testified that, at the outset of his employment, Lizzo promised to take care of him and to leave him his (Lizzo's) fortune; that later Lizzo proposed to take him into partnership when he became 21, and also told him that he would save up his salary and pay it over to him when he was 21; that Lizzo went to Italy on October 6, 1907, and, before going, promised the plaintiff that, upon returning, he would give him what was due him; that in December he received a letter from Lizzo, requesting him to come to Italy; that he complied with that request and arrived at Naples on the 30th of January, 1908, where he found Lizzo ill and in the care of his two sisters, one of whom is the defendant; that on February 6, 1908, he (the plaintiff), at Lizzo's request, filled out the two notes, and Lizzo signed and delivered them to him in the presence of the two sisters. The notes are written on the blank forms of the Mechanics' & Traders' Bank. The plaintiff testified that Lizzo took the blanks from his jacket, lying "alongside his bed," and requested him to fill them out; that the reason for dating one note back to October 4th, two days before Lizzo left this country for Italy, was that word had been received that the Mechanics' & Traders' Bank had closed its doors; and that Lizzo thought it might be open by the time the plaintiff returned, and so the note was dated back in order that it might mature by that time. The defendant denied that any such transaction occurred in her presence.

This case does not fall within the line of cases, relied upon by the appellant, in which claims have been asserted upon alleged oral contracts with decedents. There were, however, many circumstances

tending to cast suspicion upon the plaintiff's case. We do not think it profitable to discuss them at this time.

[1] The important question was whether the signatures to the notes were genuine. Aside from her own testimony, the defendant had to rely mainly on that of expert witnesses. Two experts were called, who stated that in their opinion the signatures were forgeries, but, throughout their examination, they were constantly interrupted by objections, which were usually sustained, and by motions to strike out, which were usually granted, with the result that they were unable to give connected reasons for their opinion, and that the jury must have been unable to tell at the close of their testimony what had been stricken out and what left in. It would unduly extend this opinion, and serve no useful purpose, to point out each of the interruptions referred to. It is sufficient to say that many of the objections were trivial and pointless, except as they served to break up the witness and prevent a connected statement of his reasons. Reference to one or two will suffice. The disputed signatures bear a remarkable similarity to each other and to at least one of the admittedly genuine signatures. The witness Lewis was not allowed to state, in answer to a direct question, whether in his opinion the signatures were tracings. He had previously, in describing the characteristics of the disputed writings, endeavored to describe characteristics similar to "such as appear in traced writing"; but the court had stricken out his answer on the ground that it was "incompetent, irresponsive, and improper." That witness, at the close of his evidence, asked the court to give him permission to state on what he based his conclusions, saying that, because of the interruptions, he had been unable to do so; but the request was denied.

[2] While the testimony of expert witnesses is carefully weighed and accepted with caution, the law allows such evidence. The conclusion of a handwriting expert as to the genuineness of a signature, standing alone, would be of little or no value; but, supported by sufficiently cogent reasons, his testimony might amount almost to a demonstration. While the court in this case did not directly refuse to allow the experts to state their reasons, as was done in the case of Johnson Service Co. v. Macleron, 142 App. Div. 677, 127 N. Y. Supp. 431, the effect of allowing constant trivial objections and of the erroneous rulings was virtually equivalent to such a denial.

[3] The court charged the jury that the burden was on the defendant "to establish that the notes were forged by evidence which must fairly outweigh all the other evidence in the case, * * * and, if this has not been done, then the defendant cannot recover, and your verdict must be the other way." In response to an exception, the court said:

"I meant by that that the burden of proof is upon the defendant, and that the defendant must show by evidence, which must fairly outweigh the evidence of the other side, that they are forgeries."

Another exception was taken, and the court was requested to charge:

"That the plaintiff must establish by a preponderance of the evidence that the signatures on the notes were the signatures of Antonio Lizzo."

In response to that, the plaintiff's counsel said:

"I consent to that because I understand your honor has already charged that."

Thereupon the court so charged and later charged at the request of the defendant that the jury were not to determine whether the plaintiff forged the signatures, but whether Lizzo signed the notes. The erroneous charge, however, was not explicitly retracted, and, in view of the statement of plaintiff's counsel, above quoted, there may be a question whether the jury understood that it was modified by the subsequent charge.

We might not reverse this judgment for a particular ruling, standing alone; but the cumulative effect of all the rulings and of the constant interruptions of counsel on trivial grounds is such as to induce the belief that the defendant has not had a fair trial, and that, in the interests of justice, she should be permitted another opportunity to present her defense.

The order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.