[No. 12658. Department One. January 10, 1916.]

*In the Matter of the Estate of* EDWARD CONNOLLY.
JOHN FARLEY *et al.*, *Respondents*, v. JAMES HOPKINS,
*Executor etc.*, *Appellant*.[1]

WILLS—SIGNATURE—FORGERY—EVIDENCE—SUFFICIENCY. Findings that the signature to the alleged will of an illiterate man was a forgery are sustained, where the experts were of that opinion, and an admitted signature, superimposed upon the challenged signature, was exactly similar, showing that the latter was undoubtedly a tracing from the genuine.

APPEAL—REVIEW—FINDINGS. Findings on conflicting evidence will not be disturbed when not against the preponderance of the evidence.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered October 26, 1914, upon findings in favor of the plaintiffs, in a will contest, tried to the court. Affirmed.

*Lucius G. Nash* and *Nuzum, Clark & Nuzum*, for appellant.

*Tolman & King* and *Luby & Pearson*, for respondent Farley.

*John B. White* and *Fred J. Cunningham*, for respondent State of Washington.

MOUNT, J.—The purported will of Edward Connolly, deceased, is contested by one asserting himself to be an heir, and by the state of Washington. The case took the usual turn of such cases, and there is much conflict of testimony.

After very thorough inquiry, the trial judge found the will to be a forgery, and held, further, that the right of the state to claim the property under the laws providing for the

[1]Reported in 154 Pac. 155.

escheat of property of deceased persons would not be prejudiced by his holding. The witnesses to the will testified that it was executed by the deceased, and its whereabouts is accounted for by the testimony of other witnesses from about the time it was executed until it was offered for probate. On the other hand, there is testimony tending to show that the deceased had not executed a will, and that he had manifested an intent not to do so.

Several experts in handwriting were offered as witnesses and they concur in the opinion that the purported signature to the will is a forgery. The fact that the experts agree in this case may be attributed to the unusual instance that they were all testifying on the same side of the case. At least two men who were familiar with the signature of the deceased, and with the deceased and his characteristics, expressed the opinion that the signature was that of Edward Connolly.

We have read the whole of the record with more than our usual care, keeping in hand the several exhibits to which the witnesses were addressing their testimony. We have made the same examinations and comparisons in the same way and with the same instruments employed by the expert witnesses, and but for the fact that there was offered by the proponents of the will an admitted signature of Edward Connolly, and which became the principal basis for comparison, we would be inclined, notwithstanding the opinion of the experts, to hold that the signature to the will is genuine. But when the two signatures, the one upon the will and the one referred to as exhibit No. 7 are considered, we believe, as the court below must have believed, that the signature upon the will is a tracing of the genuine signature. Edward Connolly was not a man of education, nor was he given much to writing.

It is understood of all men that no two signatures are exactly alike, or so nearly alike that they will bear a superimposition of one upon the other, and if they do, it is one of the strongest evidences of a forgery.

The subject of identity of signatures and the conclusions to be drawn therefrom are learnedly discussed by Mr. Osborn in his finished work on Questioned Documents, ch. 16. After noting that it is the natural thing for the model to go undiscovered, he says: "Strange as it may seem, however, in many important cases the model writing is actually put in the case to prove the forged writing to be genuine by means of it." It has so happened in this case. We have the model —the authenticated signature—and the questioned signature. All the books agree that if exactly similar they will prove too much.

"This coincidence of a disputed signature with a genuine one when superimposed against the light has long been held by the courts to be proof of simulation." *In re Burtis' Will*, 43 Misc. Rep. 437, 447, 89 N. Y. Supp. 441, 447.

"That an illiterate man, capable of writing his name, . . . could, without tracing and painstaking design, produce two signatures so precisely alike," is deemed incredible. *In re Koch*, 33 Misc. Rep. 153, 68 N. Y. Supp. 375.

"It is a fact well known, and may be readily verified, that no two signatures, actually written in the ordinary course of writing them, are precisely alike. The character of a person's signature is generally of uniform appearance, and the resemblance between one and another signature of the same person is thus apparent. But the coincidence is seldom, if ever known, where a genuine signature of a person, when held up to the window pane, superimposed over another genuine signature of the same person, is such a *facsimile* that the one is a perfect match to the other in every respect. . . .

"But where two or more supposed signatures are found to be counterparts, I think the simulation is detected by that circumstance. Genuine signatures will not lap with perfect similarity one over another." *Hunt v. Lawless*, 7 Abbott, New Cases, 113, 119.

"It does not seem hardly possible that one, without design, can write his name twice so exactly alike, in spaces between and height of the letters, and their slope or angles, as that a tracing of one will accurately measure the other in every respect. Indeed, numerous experiments show that it cannot

be done when it is sought to be done. Such a perfect coincidence as in the case of these two signatures in this cause is at least highly improbable, and but barely possible, if attainable at all." *Day v. Cole*, 65 Mich. 129, 31 N. W. 823.

And so conclusive is this circumstance that at least one court has followed it to the exclusion of other evidence.

It is said:

"And for this reason it does not need the testimony of experts to demonstrate that these signatures were not genuine, but tracings. The resemblance in each is so striking that it cannot help but be observed upon a bare inspection, and if a measurement be made from any given point in one, it will be found to correspond to the merest fraction of an inch in the other; in other words, each signature will superimpose the other, a similarity which does not appear in the concededly genuine signatures introduced in evidence, and which from the very nature of things could not occur." *Matter of Rice*, 81 App. Div. 223, 81 N. Y. Supp. 68.

We have not overlooked the point that is made that the will antedates by three months the authenticated signature to which we have referred, but we are mindful that it is not likely that one who is disposed to forge a signature would hesitate to endeavor to discount or destroy the evidence of his forgery by dating the forged instrument upon a day when the signature relied upon as a copy was not in existence. In short, the testimony is conflicting. We have weighed it carefully and we think that the findings and decree of the trial judge are sustained by a preponderance of the evidence. We have come to this conclusion, endeavoring in our own minds to reject entirely the testimony of two of the principal witnesses for the contestants, that is to say, Stephen Doyle and George Morris. The testimony of these witnesses is vigorously assailed by counsel. We believe ourselves that their testimony is so freighted with fabrication as to make them unworthy of belief.

There is no question of law in this case. The trial judge had the advantage of seeing and hearing the witnesses and of

marking their demeanor while upon the witness stand. We find nothing that would sustain a holding that the preponderance of the evidence is not with the contestants.

The decree of the lower court is affirmed.

MORRIS, C. J., ELLIS, CHADWICK, and FULLERTON, JJ., concur.