**SCARINZI, Plaintiff-Appellee v FARKAS, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20497.   Decided March 24th, 1947.

B. D. Nicola, Cleveland, for plaintiff-appellee.

J. H. Read, Cleveland, J. J. Wodisky, Cleveland, for defendant-appellant.

## OPINION

By HURD, PJ.:

This is an appeal on questions of law from the Common Pleas Court of Cuyahoga County wherein a verdict and judgment were rendered in favor of plaintiff in the sum of $2500.00 for damages sustained in an automobile accident alleged to have been caused by the negligence of the defendant. There are many grounds of error assigned but principally that the court erred in the rejection and admission of testimony and in its charge to the jury.

The issues were joined upon the amended petition, an amended answer and a reply. The plaintiff in his amended petition alleged in part:

"That on or about the 29th day of April, 1942, at about 1:30 P. M., while he was standing on said Denison Avenue, an east-bound Denison car stopped on Denison Avenue in front of 10009 Denison Avenue, a regular designated stopping point for street cars, for the purpose of letting off and taking on passengers; that at the same time one Helen Hlusin was standing near this plaintiff for the purpose of boarding said street car; that thereupon the said defendant operating his automobile on said street as said Helen Hlusin was starting for said street car, negligently struck the said Helen Hlusin with his said automobile and knocked her against the plaintiff and ran his said automobile against plaintiff's left leg causing him to fall and break said leg below the knee; that this plaintiff was thereupon taken to a hospital where he received medical care and attention and caused him to remain away from his busi-

ness for more than seven weeks, at which time he was still suffering from the injuries inflicted by the action of said defendant but was able to perform part of his work.

"The plaintiff, at the time of the injuries suffered by him, was engaged in the business of shoe repairing with a place of business at 10010 Denison Avenue; that he was earning and able to earn, clear of expenses, approximately $75.00 per week which he lost during the seven weeks that he was incapacitated, totaling the sum of $525.000; that during said time he had to pay two months rent for said store room amounting to $70.00; that his business suffered by reason of being closed during that time, in the sum of approxmiately $600.00; that through said injuries and because he was bedridden and inactive at home for the aforementioned seven weeks, **he became weakened in body so that his weakened condition contributed to a later infection of his right leg.**" (emphasis ours)

After detailing certain allegations of negligence the amended petition closed with a prayer for damages in the sum of $11,195.00.

The original petition was filed April 28, 1944, and claimed damages for injuries to the left leg only, for which recovery was sought in the sum of $5195.00. It was not until March 1, 1946 that the amended petition was filed claiming additional damages because of the amputation of the right leg which had not been injured in the accident.

It is clear from the evidence set forth in the record that plaintiff had been suffering from sugar diabetes from the year 1920 on, and although certain treatments had been prescribed for him he had not followed the directions given for treatment except for a period of perhaps two weeks. The record shows that in September, 1942, about five months after the accident, he was admitted to City Hospital suffering from an infected ulcer of the right foot; that he was still suffering from diabetes and that it became necessary to amputate his right leg as above stated. Thus it will be noted it became a matter of very great importance as to whether there was a causal relation between the injury to the left leg sustained in the accident, and the later infection and amputation of the right leg.

One of the witnesses for plaintiff was Dr. David Steele, an acknowledged x-ray specialist, who had taken x-ray pictures of the left leg long before the infection of the right leg developed. The evidence was clear that the doctor had never examined the patient and while he was on the stand the following ensued:

**52**

"Q. Doctor, do you know the history of this man's case?

"A. No, I know nothing about it.

"Q. Since the last x-ray have you seen his left leg?

"A. No.

\* \* \* \* \*

"A. **I would like to say first that I am not a specialist in diabetes.** I know the disease we call sugar diabetes, in part as a student and in part as a house doctor, but at the present time I know diabetes only as an x-ray man, **therefore I am not an expert on diabetes.** (emphasis ours)

\* \* \* \* \*

"Q. When the lateral space is reduced and when one favors the left leg which has been broken, does that place a greater strain on the right leg, insofar as where one is afflicted with diabetes?

\* \* \* \* \*

"A. I wouldn't want to say it produced it. I would say it was adding work to a limb that already had an impaired blood supply.

\* \* \* \* \*

"Q. Doctor, if later infection set in in the lateral side of the foot of the right leg, after the greater use and strain because of the break in the left leg, what is your opinion as to whether the break in the left leg, aggravated the infection and final cutting off of the right leg?

"A. I think there is a relation.

"Q. What is that?

"A. I think there is a relation.

The Court: **He says there is a causal relation.**" (emphasis ours)

It will be observed from the foregoing, first, that Dr. David Steele by his own admission had performed only x-ray services; that since he had taken the x-ray pictures he had not seen the patient; that he is not an expert on diabetes and that he knows diabetes only as an x-ray man. In addition he did not testify that there was a **causal relation** between the injury to the left knee and the infection which developed in the right foot requiring amputation but the trial judge by stating "he says there is a causal relation" attributed an opinion to the doctor which was not shown by his testimony. We believe this was prejudicial error, the natural effect of which would be to influence the jury in believing that the doctor had so testified and that the court was vouching for such testimony. Because of the lack of the qualifica-

tions of the doctor as an expert in diabetes it would seem that he was not competent to testify upon this question in any event.

Thereafter when the defendant called as its witness one Dr. John W. Schuer who qualified as an expert on diabetes and testified in answer to a hypothetical question that there was no causal relation between the fracture of the left leg and the amputation of the right leg, the court refused to permit the doctor to give the reasons for his opinion. A proffer was made for the record that if permitted to testify the doctor would state the reasons for his opinion.

We believe the conclusion of this testimony constituted prejudicial error because the defendant was entitled as a matter of right to give to the jury whatever benefit might have accrued from the doctor's explanation of his reasons for his answer. The foregoing circumstances when considered together were highly prejudicial to the rights of the defendant because there was an issue as to whether or not the injury to the left leg had a causal relation to the infection and later amputation of the right leg, when admittedly the plaintiff had been a sufferer from diabetes for many years. In the first instance the effect of the court's action was to produce on behalf of the plaintiff testimony which had not been adduced from the witness and in the second instance to deny to a qualified expert witness for the defendant the opportunity to explain the reasons for his conclusion that there was no causal relation between the original injury to the left leg and the later amputation of the right leg.

Coming now to a consideration of the charge of the court. In charging the jury on the question of contributory negligence the court charged in part as follows:

"The charge of contributory negligence raises a presumption of negligence on the part of the defendant."

"Otherwise there would be no negligence to contribute to."

Later on in the charge the court said:

"In other words in simple language, the plaintiff claims that the defendant was to blame, the defendant says he was not to blame. He says, **'I was somewhat to blame' and the plaintiff was somewhat to blame also."** (emphasis ours)

The majority of this court have serious doubt as to whether or not the question of contributory negligence was raised by

the evidence although it was raised by the pleadings. In any event, the charge as given was erroneous on the subject of contributory negligence.

The pleading of defendant by way of answer was merely in the alternative in which it, was set forth "that if it should be found that the defendant was negligent in any manner which fact of negligence this defendant specifically denies, then upon such finding this defendant says the plaintiff was contributorily negligent and that his negligence was the proximate cause of his injuries."

Such a pleading raises no presumption whatsoever against the defendant and it was erroneous so to charge.

For the reasons stated the majority of the court is of the opinion that error intervened prejudicial to the right of the defendant who was thereby prevented from having a fair trial on the issues joined.

The cause is therefore reversed and remanded for further proceedings according to law.

SKEEL, J, concurs.

MORGAN, J, dissents because in his opinion the errors complained of were not prejudicial. The evidence of liability is overwhelming and the amount of the verdict is sustained by the admissible credible evidence.