## (February 19, 1963)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JAMES KNIGHT, Appellant.

*Per Curiam.* The defendant was convicted of the crime of manslaughter as a consequence of his stabbing one Paden and thereby causing the latter's death. There is no doubt that he did so and the only questions arise in connection with his claim of insanity.

With all due respect to the principles stated in the dissenting opinion and in connection with which it is argued that the court was led into error by the tactics of the District Attorney, we find that in this case they have no significant application. Insanity is a very broad term, including many diverse mental conditions. Here, the only claim was that defendant was an epileptic, a claim that was amply established. It was also established that this disease does not render its victims generally incompetent but only during seizures described as episodes of epileptic fury. It is also clear that defendant was not suffering from such a seizure during the day on which his homicidal assault was perpetrated. One of the significant symptoms of an epileptic fury is that the sufferer does not only not know what he is doing but also his acts are not recorded in his memory and the period remains an absolute blank. Here, the defendant was entirely clear as to all the incidents of the day in question and gave a detailed account of his actions. No impairment of his recollection was asserted — in fact, the contrary was urged. In view of this, the argument that the claim of insanity was a diversionary tactic is not as indefensible as it might appear. Furthermore

we cannot see that the rulings made on the District Attorney's application had any material bearing on the result.

The judgment of conviction should be affirmed.

VALENTE, J. (dissenting). I dissent and would reverse the conviction and order a new trial because of the highly prejudicial exclusion of evidence offered by defendant as to the crucial issue in this case — defendant's plea of insanity.

Defendant was indicted and tried for the crime of murder, first degree. He was charged with having stabbed one Charles Padin on September 1, 1960, so as to cause his death on that date. The jury found him guilty of manslaughter, first degree, and he was sentenced to State prison for a term of 10 to 20 years.

On this record, it is sufficiently established that on September 1, 1960, defendant stabbed the deceased, inflicting wounds that resulted in death. However, I would reverse the conviction and order a new trial because there was prejudicial error committed in the restriction of the testimony of Dr. Richard Hoffman, a psychiatrist called as an expert witness to testify as to defendant's insanity.

As a defense defendant offered proof of his insanity at the time of the commission of the crime.* In support of that defense, defendant called as a witness Dr. Richard Hoffman, who had examined defendant prior to the trial. Moreover, in further substantiation of the defense, there was introduced in evidence psychiatric records of Bellevue Hospital covering four commitments of defendant to its psychiatric ward from 1953 to July, 1961. Two of those commitments had been ordered by the County Court while defendant was awaiting trial on the instant indictment. The other two — one in 1953 and another in 1956 — resulted from attempts to commit suicide. In 1953, defendant took an overdose of phenobarbital and delantin, and in 1956 he had drunk some acid.

In addition, evidence had been received of the medical discharge of the defendant from the Air Force because of psychomotor epilepsy and other reasons, and of the evaluation proceedings incident to such discharge.

Also pertinent to the defense of insanity was defendant's testimony that he had suffered from epilepsy from childhood, and that, in 1957, he was confined in a hospital for four months because of head injuries sustained in an automobile accident. Additionally, there was proof that defendant had consumed a large quantity of alcoholic beverages on the day of the homicide.

Following his indictment, and while awaiting trial, defendant was twice committed — on October 10, 1960 and July 12, 1961 — for psychiatric examination pursuant to section 658 of the Code of Criminal Procedure. The record also shows a commitment from the Magistrates' Court to Bellevue Hospital for mental observation on September 28, 1960; and defendant continued to stay at Bellevue under the order of October 10, 1960.

Parenthetically, in view of defendant's psychiatric history, it is difficult to understand the prosecution's contention made in the People's brief upon this appeal, that the injection of the defense of insanity was merely a diversionary tactic, having no evidentiary basis, and calculated solely to detract the attention of the jury from the true issues of the case. It must be obvious that the issue of insanity was a substantial, crucial and vital one. (See *People* v. *Roth,* 11 N Y 2d 80, 86.)

After Dr. Hoffman had taken the stand as a witness for the defense and had given his qualifications, he testified that he had conducted a psychiatric examination of the defendant in person. Dr. Hoffman also testified that he had

---

* The record does not indicate there was a plea of insanity, as a specification under a plea of not guilty, as provided for in section 336 of the Code of Criminal Procedure. That did not prevent proof of insanity as a defense. (*People* v. *Draper,* 278 App. Div. 298, affd. 303 N. Y. 653; *People* v. *Joyce,* 233 N. Y. 61.)

examined the Bellevue Hospital records and the United States Air Force record of defendant's discharge. As a result of the examination of defendant and the records, Dr. Hoffman testified that he found that defendant was an epileptic. Upon objection by the District Attorney, the witness was not permitted to state the facts upon which he had concluded that defendant was an epileptic.

Then a hypothetical question was propounded and Dr. Hoffman was asked whether he had an opinion as to whether defendant knew the nature and quality of his act or knew the act was wrong. Following the assertion that he had such an opinion, defense counsel attempted to elicit that opinion from the witness. Before Dr. Hoffman was finally restricted to the simple answer, "No, he did not", there were constant interruptions and objections by the District Attorney, most of them wholly unwarranted, which take up some seven pages of the stenographic record — as a consequence of which the testimony of the psychiatrist was so fragmented as to leave the jury confused.

Additionally, Dr. Hoffman was not permitted to state the reasons for his opinion, he was not permitted to state what he had found from his examination of the defendant and of the records in evidence to support his conclusion that defendant was legally insane at the time the crime was committed.

The essence of the objections of the District Attorney — which were sustained by the court — was that the psychiatrist must be limited to a "yes or no" answer in giving his opinion as to the sanity of the defendant as of the time of the homicide and that the reasons for the opinion could only be explored upon cross-examination. The court sustained the contention of the prosecutor that the psychiatrist could not state what parts of the records in evidence he considered in reaching his opinion, nor could he interpret them for the jury, nor could he even state, for the benefit of the jury, the part of the psychiatrist's examination of the defendant played in arriving at his conclusion.

Before demonstrating the highly prejudicial nature of the error in excluding testimony as to the reasons for the expert's opinion, mention must be made of the ensuing tactics of the prosecution which exacerbated the detriment to the defense. When defense counsel was satisfied that he would be foreclosed from eliciting the basis for the psychiatrist's opinion, he concluded the direct examination of the expert. At that point, the District Attorney requested a continuance because he anticipated an extended cross-examination of the psychiatrist. It must again be emphasized that in objecting to the eliciting the reasons for the expert's opinion, the District Attorney maintained that this was a matter solely for cross-examination. Yet, the next day when trial was resumed, the District Attorney announced he would not cross-examine the psychiatrist. When defense counsel thereupon sought permission to reopen the examination of Dr. Hoffman for the purpose of eliciting the bases for his opinion, objection by the District Attorney on the ground that the examination had been concluded, was sustained. Thus, by refusing to cross-examine the witness, the District Attorney effectively removed any possibility of curing the error in excluding the evidence of the reasons for the expert's opinion by eliciting such testimony on cross-examination.*

---

* Another maneuver of the District Attorney deserves passing reference. When defense counsel offered the Bellevue psychiatric records for "the diagnosis, prognosis and treatment alone", the prosecutor suggested that such a limitation would require "spending several hours  *  *  *  looking these things over". As a consequence, defense counsel offered the entire record, which included the inadmissible reports of the psychiatrists, who had examined defendant pursuant to section 662 of the Code of Criminal Procedure and hearsay. (*People* v. *Roth,* 11 N Y 2d 80; *People* v. *Samuels,* 302 N. Y. 163.)

It is well settled that an expert witness may be called upon to give the reasons for his opinion both on direct and cross-examination. (*People* v. *Crossland,* 9 N Y 2d 464, 467; *People* v. *Faber,* 199 N. Y. 256, 267; *People* v. *Youngs,* 151 N. Y. 210, 218; *Venuto* v. *Lizzo,* 148 App. Div. 164; *Johnson Serv. Co.* v. *Maclernon,* 142 App. Div. 677.) That rule has been applied in other States as well. (*Commercial Standard Ins. Co.* v. *Robinson,* 137 Tex. 184; *Lemmon* v. *Denver & Rio Grande Western R. R. Co.,* 9 Utah 2d 195; *Scarinzi* v. *Farkas,* 80 Ohio App. 409; *Squire* v. *Industrial Comm.,* 70 N. E. 2d 95, 101 [Ohio]; see, also, 2 Wigmore, Evidence [3d ed.], § 562; 2 Jones, Evidence [5th ed.], § 437, p. 832; McCormick, Evidence, § 267, p. 565; Richardson, Evidence [8th ed.], § 390, p. 369.)

The soundness of the rule is evident. If the opinion of the expert witness is to have any value for the jury, the facts and symptoms upon which the opinion is based should be expounded so that the jury may intelligently evaluate the opinion.

In the instant case, all Dr. Hoffman was permitted to state was that in his opinion the defendant was legally insane, that is, that at the time the crime was committed defendant did not understand the nature and quality of his act or that it was wrong. He was not permitted to state to what extent his examination of the defendant contributed to his opinion, or was he permitted to indicate what part or portions of the voluminous Bellevue Hospital psychiatric records he based his opinion, nor what effect the Air Force records had in reaching his conclusion. In short, he was prevented from interpreting the facts to the jury and casting them in the light of his professional experience and learning.

The defendant was an epileptic since childhood. He had suffered seizures while in prison awaiting trial. There was testimony of his drinking a quantity of alcoholic beverages on the day of the homicide. One of his parents had died in an insane asylum. He had twice attempted suicide; and there are a host of other significant psychiatric details in the Bellevue Hospital records. What significance, if any, these facts had in the formulation of Dr. Hoffman's opinion was denied to the jury by the erroneous exclusion of the evidence as to the bases for the psychiatrist's opinion. The defense of insanity in this case was not a perfunctory one. The exclusion of the rationale of the psychiatrist — who incidentally, was made available to the defendant by funds supplied by the city to insure a proper defense — was clearly prejudicial since the effect was to make his testimony virtually meaningless.

That there is no direct evidence that defendant was suffering from a seizure at the time of the homicide or that he· killed a man does not mitigate the prejudice. Had Dr. Hoffman been permitted to testify, he might have established that his opinion was based on evidence showing that at the time of the stabbing defendant was suffering from a psychomotor epileptic seizure. As Dr. Kaplan, the psychiatric expert called by the People in rebuttal, testified: "Epilepsy is a paroxysmal neurological disorder, which means that it's a recurrent disorder, resulting in a brief period of loss of awareness, or loss of consciousness, characterized by different kinds of seizures". Dr. Kaplan further testified there were five types of sizures: the grand mal, petit mal, psychomotor, Jacksonian, and epileptic equivalents. In psychomotor epilepsy, Dr. Kaplan further testified, there are "varying types of seizures usually lasting for several minutes to longer periods of time, sometimes as long as a half hour or more during which there are periods of automatic behavior in which the patient is doing things, but has no recollection of what he is doing". A seizure of the psychomotor type, therefore, is not characterized by "episodes of epileptic fury", but activities of automatic behavior. (For a similar type of testimony,

see *People* v. *Higgins,* 5 N Y 2d 607.) Moreover, Dr. Kaplan testified that defendant's type of epilepsy had been diagnosed as psychomotor!

When the defense of insanity is presented under section 1120 of the Penal Law, the burden is on the People to establish on the whole case, beyond a reasonable doubt, that at the time of the crime defendant knew the nature and quality of his act and that it was wrong. (*People* v. *Higgins, supra; People* v. *Horton,* 308 N. Y. 1; *People* v. *Kelly,* 302 N. Y. 512.) The court so charged the jury in this case, although the charge made no reference to the testimony regarding the different types of epileptic seizures. It was for the People, therefore, to prove beyond a reasonable doubt, in view of the proof that defendant was an epileptic, that at the time the stabbing occurred, defendant was legally sane and was not in the throes of a psychomotor epileptic seizure. (See *People* v. *Higgins, supra.*)

While the opinion of defendant's psychiatrist would not be conclusive upon the jury — and the court so charged — his interpretation of the facts on which he based his opinion and the significance he attached to them were essential for the jury properly to evaluate the weight to be given to the opinion. Such data would materially assist the jury in determining the ultimate question as to whether the People had satisfied the burden of establishing, beyond a reasonable doubt, the legal sanity of defendant at the time of the commission of the crime. Error in excluding the psychiatrist's testimony was therefore substantial since it went to the very core of the defense of insanity interposed by defendant.

The judgment of conviction should therefore be reversed on the law and a new trial granted.

Rabin, J. P., McNally and Steuer, JJ., concur in *Per Curiam* opinion; Valente, J., dissents in opinion in which Eager, J., concurs.

Judgment of conviction affirmed.